# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAVID J. GOODELL, | : | |
| | : | Case No. 3:18-cv-16588 (BRM) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GARY M. LANIGAN, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Corrections Officer Gilbert Christmas, Corrections Officer Sean Clifton, Administrator Stephen D'Ilio, Corrections Officer Francis Danley, Sergeant Richard Defazio, Warden Steven Johnson, Lieutenant Thomas Kennedy, former Commissioner Gary M. Lanigan, Sergeant Mariconda,[1] Sergeant Sean Patterson, Corrections Officer Elia Perez, Corrections Officer Perkins and Sergeant Ronald Scheuermann (collectively, "Defendants") seeking to dismiss Plaintiff David Goodell's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) Plaintiff filed Opposition to Defendants' Motion (ECF No. 20), and Defendants did not file a Reply. Having reviewed the parties' submissions filed in connection with the Motion and, having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion to Dismiss is **GRANTED** in part.

---

[1] Plaintiff refers to this individual as both "Mariconda" and "Maricopa" throughout the Complaint. As the Court is unsure which is correct, for the sake of uniformity, will refer to this individual as "Mariconda."

# I. Background[2]

Plaintiff names the following individuals as defendants: the former Commissioner of the New Jersey Department of Corrections ("DOC"), Gary Lanigan; the warden of New Jersey State Prison, Steven Johnson; the prison administrator, Stephen D'Ilio; Lieutenant Thomas Kennedy; Sergeant Richard Defazio; Sergeant Sean Patterson; Sergeant Ronald Scheuermann; Sergeant Mariconda; Corrections Officer Elia Perez; Corrections Officer Sean Clifton; Corrections Officer Francis Danley; Corrections Officer Gilbert Christmas; Corrections Officer Perkins; and various John Doe corrections officer defendants.

Plaintiff has been incarcerated at New Jersey State Prison since 2013. (Compl. ¶ 74.) On December 1, 2016, Sergeant Scheuermann went to investigate an allegation that inmates were holding their food trays in protest for being denied access to a communications kiosk. (*Id.* ¶¶ 81-83.) After Sergeant Scheuermann approached Plaintiff about the issue, Plaintiff explained he was not withholding his food tray as part of a protest and gave the food tray to Scheuermann. (*Id.*) Plaintiff explained he had an unrelated issue - the food given did not comply with his doctor-ordered special diet due to his food allergies. (*Id.*)

Lieutenant Kennedy spoke to Sergeant Scheuermann, Sergeant DeFazio and Sergeant Patterson about the status of the tray situation. (*Id.* ¶ 84.) Sergeant Scheuermann falsely told Kennedy that Plaintiff was one of two instigators of the group demonstration, along with another inmate. (*Id.* ¶ 85.) Based on Scheuermann's report, Lieutenant Kennedy directed these sergeants to issue institutional charges against Plaintiff and remove him from Housing Unit 7, which Scheuermann thereafter did. (*Id.* ¶ 87.) Defazio, with Perez and Clifton, escorted Plaintiff from the

---

[2] For the purposes of this Motion to Dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

housing unit to the intake cell. (*Id.* ¶ 91.) Sergeant Patterson telephoned Officer Danley and directed Danley to report to conduct an inmate escort. (*Id.* ¶ 92.) Although Officer Danley was not informed of any disturbance, he nonetheless first went to Intake to obtain a baton and restraints. (*Id.* ¶ 93.) While Plaintiff was being escorted by Defazio, Perez, Clifton and Patterson, Clifton remarked loudly, "Oh you like to kill women." (*Id.* ¶ 101.) Perez then hit Plaintiff in the mouth. (*Id.* ¶ 102.) Plaintiff was screened in a "BOSS Chair" for possible secreted metal contraband with negative results and then taken to a holding cell to be strip searched. (*Id.* ¶ 103.) While in the holding cell, Plaintiff's handcuffs were removed by Perez and he was directed to remove his clothing items one at a time. (*Id.* ¶ 104.) As permitted, inmates on Plaintiff's unit use 5" square mirrors to put through their bars to see other inmates in order to communicate, and Plaintiff had such a mirror on him on December 1, 2016. (*Id.* ¶ 105.) During the strip search, Defazio alleged Plaintiff reached into his waistband to pull out a weapon, and DeFazio shouted "weapon, weapon, weapon!" (*Id.* ¶ 106.) Plaintiff actually had a prison-issued mirror on him and was removing it as part of the search. (*Id.* ¶ 107.) Defazio, Perez and Clifton proceeded to use multiple open and closed fist strikes to Plaintiff's head, face and body, and then took Plaintiff to the ground. (*Id.* ¶ 109.) During the incident, Defazio, Perez and Clifton repeatedly said, "You like killing women." (*Id.* ¶ 110.) Plaintiff attempted to roll himself into a ball and get under the bench to escape being hit. (*Id.* ¶ 111.) Patterson, Danley and Christmas thereafter joined Defazio, Perez and Clifton in beating Plaintiff. (*Id.* ¶ 113.) Although Plaintiff was not resisting, Patterson also used O/C spray on Plaintiff. (*Id.* ¶ 114.) Plaintiff eventually lost consciousness, and when he woke up, he was placed in handcuffs, leg irons and a "spit mask," even though he was not being combative. (*Id.* ¶ 116.)

Plaintiff was then escorted to the clinic where he was evaluated by Dr. Nwachuku and Nurse Carver, who determined Plaintiff sustained head trauma and a possible broken nose. (*Id.* ¶ 118.) Due to the severity of his injuries, Dr. Nwachukwu determined Plaintiff required emergency medical services, and Plaintiff was thereafter transported to Helene Fuld Medical Center. (*Id.* ¶ 119.) At Helene Fuld, medical personnel diagnosed Plaintiff with facial fractures, a comminuted nasal septal fracture, left wrist fracture, forearm fracture, multiple abrasions to his left flank with bruising, abrasions on both knees, and bruising and edema to his left and right ankles. (*Id.* ¶ 120.)

Plaintiff's "medical providers" at the prison sought to fit Plaintiff with a full size cast on his arm to treat his fractures, however, Officer Mariconda instructed the doctors to only put a half cast on him so he could still be handcuffed. (*Id.* ¶¶ 126, 127.) On December 14, 2016, John Doe 6 "required" medical personnel to prematurely remove Plaintiff's cast; as a result, it was only on for two weeks instead of the medically required six weeks. (*Id.* ¶ 130.) Although Plaintiff suffered multiple facial fractures causing difficulty breathing due to an internal nasal valve collapse and septal deviation, Defendants Lanigan, D'Ilio and Johnson did not approve him for surgical treatment for six (6) months. (*Id.* ¶ 132.) After he received surgery in April 2017, the Department of Corrections did not approve Plaintiff for therapy at a pain management clinic until June 13, 2018. (*Id.* ¶ 137.)

On January 20, 2017, Plaintiff filed a grievance related to his December 2016 assault (*Id.* ¶ 139.) Subsequent to the filing of the grievance, Plaintiff alleges he has been retaliated against in the following ways:

> Upon returning from a medical checkup at St. Francis Hospital on February 7, 2017, Perkins directed a Corrections Officer to put Plaintiff "in his favorite cell," i.e., the cell where Plaintiff had been attacked two months earlier. Perkins then directed Plaintiff to face the wall.

On April 4, 2017, while Plaintiff was being examined by a doctor via video conference, Plaintiff asked Nurse Bruin about obtaining a consult regarding surgery. While Plaintiff was speaking to Nurse Bruin, Perkins interrupted and said he "wasn't there for that surgery."

During the eight years prior to the December 1, 2016 assault on Plaintiff by the above-referenced defendants, Plaintiff's brother, Jason (who had a 1998 conviction), was on the approved list of visitors and often visited Plaintiff at NJSP, notwithstanding Jason's prior criminal record. On September 9, 2017, Jason was denied entry to NJSP. Notwithstanding that Jason Goodell had never been denied entry based on his prior criminal record, the purported reason for denial of entry to Jason Goodell was said record.

(*Id.* ¶¶ 141-150.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or*

*explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III. DECISION

### A. § 1983 and NJCRA Claims[3]

#### 1. Official Capacity

Defendants first argue all claims against them in their official capacity must be dismissed because they are not "persons" under § 1983, and such claims are also barred by the Eleventh Amendment. (Defs.' Br. 5.) Plaintiff concedes Defendants are correct, and the official capacity claims should be dismissed. (Pl.'s Opp. Br. 14.) Therefore, the claims against all Defendants in their official capacity are dismissed. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (states and state officials, acting in their official capacity, are not "persons" under § 1983).

#### 2. Supervisory Defendants

Next, the "Supervisory Defendants" move to dismiss the claims against them. (Defs.' Br. 12-15.) Counsel for Defendants does not specify who is included as "Supervisory Defendants," but based on the citations to the Complaint, it appears to consist of Defendants Gary Lanigan, Steven Johnson and Stephen D'Ilio. (*Id.* at 14 (citing Compl. ¶¶ 2-4, 31-36).)

Personal involvement by a defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a

---

[3] The same analysis used for the § 1983 claims applies to the NJCRA claims. *See Estate of Martin v. U.S. Marshals Serv. Agents*, 649 F. App'x 239, 245 n.4 (3d Cir. 2016) (noting that "it appears undisputed that [p]laintiffs' claims under the New Jersey Constitution and the New Jersey Civil Rights Act trigger the same legal elements and principles as . . . [the] federal causes of action [under Section 1983]").

policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Hence, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

The Third Circuit in *Barkes v. First Correctional Medical, Inc.*, reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable under § 1983 for implementing deficient policies. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), reversed on other grounds by *Taylor v. Barkes*, —— U.S. ——, 135 S. Ct. 2042, 2043, 192 L.Ed.2d 78 (2015) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*, to find a supervisor acted with deliberate indifference as a policymaker,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.

Failure to train or supervise claims "are generally considered a subcategory of policy or practice liability." *See Barkes*, 766 F.3d at 316. A failure to train claim requires a plaintiff to "identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) (internal quotation marks and citations omitted).

Deliberate indifference in the supervisory context may be demonstrated by

> (i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's] (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met.

*Beers—Capitol*, 256 F.3d at 136-37 (citing *Sample*, 885 F.2d at 1099).

In their Motion, the Supervisory Defendants point to the boilerplate paragraphs about the roles of these individuals at the Department of Corrections and the prison and argue Plaintiff's complaint is "devoid of any factual allegations regarding these Defendants or any actions or inactions they took with respect to Plaintiff's alleged complained-of-conditions. Moreover, Plaintiff fails to allege with requisite detail a policy or practice implemented by these Defendants that created an unreasonable risk of a constitutional violation." (Defs.' Br. 14.) While the Supervisory Defendants are correct such allegations are not contained in the paragraphs to which they refer, there are such factual allegations elsewhere in the Complaint. Specifically, Plaintiff alleges these Defendants were aware of prior incidents of excessive force but failed to address their deficient policies; failed to adequately train the officers on excessive force; and failed to

adequately discipline the officers for use of excessive force. (Compl. ¶¶ 162-163; 166-176.)  In light of those specific allegations, which are not addressed by Defendants, their Motion to Dismiss the supervisory liability claims is denied.[4]

### 3. Punitive Damages

Defendants next move to dismiss Plaintiff's claim for punitive damages because the Complaint does not allege sufficient facts to allow such a claim to proceed. (Defs.' Br. 15.)

Punitive damages are not awarded for compensation of injury; they are awarded for the dual purpose of punishing the wrongdoer and deterring future violations. In a § 1983 action, a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, *or* when it involves reckless or callous indifference to the federally protected right of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (emphasis added). Therefore, for a § 1983 plaintiff to qualify for punitive damages, a "defendant's conduct must be, at a minimum, reckless and callous"—it is not essential that defendants meet the higher standard of intentional or evil motive. *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

In support of their Motion, Defendants allege only "in the instant case, the Complaint does not allege facts demonstrating that the State Defendants acted with an 'evil motive' or 'callous indifference.' Therefore, Plaintiff's claim for punitive damages should be dismissed." (Defs.' Br. 16.) Contrary to Defendants statement, the Complaint contains many factual allegations which could be considered sufficient to show "evil motive" or "callous indifference." Therefore, at this early stage of the litigation, the Court declines to dismiss the punitive damages claim.

---

[4] While the Court will deny their Motion with regard to excessive force, the Court will grant their Motion with regard to denial of medical treatment and retaliation. Plaintiff does not allege any facts which would suggest deliberate indifference on the part of these Supervisory Defendants related to medical treatment or retaliation policies.

### 4. Failure to Intervene

Next, Defendants Lieutenant Kennedy; Sergeant Defazio; Sergeant Patterson; Sergeant Scheuermann; Corrections Officer Perez; Corrections Officer Clifton; Corrections Officer Danley; Corrections Officer Christmas; and Corrections Officer Perkins move to dismiss Plaintiff's claim for failure to intervene.[5]

The Third Circuit has held "that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "A corrections officer cannot escape liability by relying upon his inferior or non-supervisory rank vis-vis the other officers." *Id.* "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651 (citation omitted).

With regard to Lieutenant Thomas Kennedy, Sergeant Ronald Scheuermann and Corrections Officer Perkins, a review of the Complaint reveals none of these individuals were present during the alleged attack on Plaintiff with an opportunity to intervene. *See Knox v. Doe*, 487 F. App'x 725, 728 (3d Cir. 2012) ("The facts alleged indicate that the prison guards were not present during the attack, having left to attend to a different part of the yard, and therefore they could not have intervened.") While the Complaint alleges these individuals were "on duty at the time of subject events," there is no indication they were in the vicinity with an opportunity to intervene when it occurred. As such, the failure to intervene claim is dismissed against those defendants. *Id.*

---

[5] Plaintiff "agrees to dismiss" the failure to intervene claim against Defendants Lanigan, D'Ilio and Johnson, however the claim was not brought against them. (Compl. ¶ 220-228.)

As against the remaining defendants, Plaintiff has sufficiently alleged they were present during the attack with an opportunity to intervene. While it is not clear how long the attack lasted, it was long enough that Plaintiff could hide under a bench, and Defendants Patterson, Danley and Christmas could join in the attack after placing another inmate into a holding cell. (Compl. ¶ 113.) Accordingly, the Court finds Plaintiff has alleged sufficient facts Defendants Defazio, Patterson, Perez, Clifton, Danley and Christmas were present during the alleged assault on Plaintiff and failed to intervene despite a reasonable opportunity to do so. Their Motion to Dismiss this claim is therefore denied.

### 5. Conspiracy

Defendants Lieutenant Kennedy; Sergeant Defazio; Sergeant Patterson; Sergeant Scheuermann; Corrections Officer Perez; Corrections Officer Clifton; Corrections Officer Danley; Corrections Officer Christmas; and Corrections Officer Perkins move to dismiss Plaintiff's claim for conspiracy under § 1983.[6]

To state a claim for conspiracy under § 1983, a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999), superseded in part by statute on other grounds as recognized by *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). A § 1983 claim for civil-rights conspiracy must show an understanding or "meeting of the minds" with facts demonstrating agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). If there is a lack of direct evidence, an

---

[6] Plaintiff agrees to withdraw the § 1985 conspiracy claim against all Defendants. (Pl.'s Br. 44.) Plaintiff also "agrees to withdraw" the § 1983 and common law conspiracy claims against Defendants Lanigan, D'Ilio and Johnson, but again, he does not actually bring conspiracy claims against those Defendants. (Compl. ¶¶ 229-37.)

agreement or meeting of the minds may be established by circumstantial evidence, such as by identifying interactions between the conspirators, the approximate timing of the agreement, the parties in agreement, and the period or object of the conspiracy. *Id.* And in the context of an alleged conspiracy among police officers, it may manifest as "conversations" between officers about the incident, "allegedly distorted" stories that "emerged," an "awareness of conflicting stories" and "irregularities in the series of official investigations" into the incident. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (internal citations omitted).

At this early juncture, the Court finds Plaintiff has alleged facts to suggest a conspiracy between Defendants Kennedy, Scheurermann, DeFazio, Perez, Patterson, Clifton and Danley to use excessive force. Specifically, after Defendant Kennedy ordered Defendants Scheurermann, DeFazio, Patterson, Perez and Clifton to charge Plaintiff and move him to pre-hearing detention, Patterson telephoned Defendant Danley and direct him to report for an inmate transport. (Compl. ¶¶ 85-92.) Despite Danley not being apprised of any disturbances, he first went to Intake to obtain a baton and restraints before reporting for the escort. (Compl. ¶ 93.) While there may be many reasons why Defendant Danley went to obtain a baton and restraints before the transport, including it possibly being standard protocol, at this motion to dismiss stage, the Court finds such an allegation to be sufficient circumstantial evidence of a conspiracy between these Defendants to use excessive force.

Additionally, Plaintiff alleges the Disciplinary Hearing Officer who conducted Plaintiff's disciplinary hearing noted "SCO Clifton and SCO Perez kept requesting th[e] Hearing Officer to refer to the Special [Reports] instead of answering the questions" and "SCO Perez directed th[e] Hearing Officer to refer to Sergeant Defazio and the special reports to obtain the answers to the confrontational questions. SCO Clifton and SCO Perez appeared to be intimidated by

confrontational questions and did not appear comfortable answering the questions." (Comp. ¶ 124.) These alleged observations by the hearing officer are also suggestive of a conspiracy to use excessive force.

For these reasons, the Court denies Defendants Kennedy, Scheurermann, DeFazio, Perez, Patterson, Clifton and Danley's Motion to Dismiss the conspiracy to commit excessive force. There are, however, no allegations to suggest Defendant Christmas engaged in a conspiracy to use excessive force, nor are there factual allegations any Defendants engaged in a conspiracy to deny Plaintiff medical treatment or retaliate against him for filing grievances. Rather, Plaintiff simply states, in conclusory manner, such a conspiracy existed. Accordingly, any intended claim for a conspiracy to violate Plaintiff's right to medical treatment and retaliation are dismissed without prejudice. The conspiracy claim is also dismissed without prejudice against Defendant Christmas.

### 6. Retaliation

While it is not entirely clear against whom Plaintiff intended to raise the retaliation claim, it appears to be Defendants Perkins, Lanigan, Johnson and D'Ilio.

To state a First Amendment claim of retaliation for engaging in protected conduct, a plaintiff must allege facts showing: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001)). Filing a prison grievance is constitutionally protected activity. *Id.* at 422 (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

An adverse action is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* at 422 n.6 (citing *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir.

2000) (internal quotation marks omitted)). An adverse action "need not be great" but must be "more than de minimus." *Id.* at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted)).

To show constitutionally protected conduct was a substantial or motivating factor in the alleged retaliatory act, a plaintiff may rely on circumstantial evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Watson*, 834 F.3d at 422 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). A causal link between the timing of the protected activity and the retaliatory action must be "unusually suggestive" of a retaliatory motive. *Id.* at 424 (*Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). When the timing is not unduly suggestive, a plaintiff may establish retaliatory motive with timing plus "evidence gleaned from the record as a whole." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)).

As against Defendant Perkins, Plaintiff established the first element of a retaliation claim by alleging he was engaged in the protected activity of filing prison grievances. *See Watson*, 34 F.3d at 422 (filing prison grievance is constitutionally protected activity). However, even if the Court were to assume Perkins's acts of placing Plaintiff in the cell where the incident occurred and forcing him to face the wall and interfering during a medical consultation were to be considered adverse acts, Plaintiff has failed to allege any facts to suggest the filing of the grievances was a substantial or motivating factor. He merely alleges the grievances were filed on January 20, 2017; on February 7, 2017, he was taken back to the cell; and on April 4, 2017, Perkins interfered during his medical appointment. (Compl. ¶¶ 139-47.) Other than the events occurring within a three-

month span, there is nothing to suggest the grievances were the motivating factor for Perkins. It is not even clear Perkins was aware of the grievances. As such, the Court will grant Defendant Perkins's Motion to Dismiss the retaliation claim.

The claim against Defendants Lanigan, Johnson and D'Ilio suffer from the same defect. Even assuming the denial of Plaintiff's brother for visitation on one occasion could be considered an adverse action "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights," Plaintiff has again failed to provide facts to suggest a causal connection between the grievances and said action. He merely alleges eight months after he filed his grievance, on one occasion, his brother was denied visitation. (Compl. ¶¶ 148-51.) In addition to the fact it is not even clear Defendants Lanigan, Johnson and D'Ilio were involved in denying visitation to Plaintiff's brother, there is also nothing to indicate the grievances and this action are connected in any way. Accordingly, the retaliation claim against Defendants Lanigan, Johnson and D'Ilio is also dismissed without prejudice.

### 7. Denial of Medical Treatment

As with the retaliation claim, it is not entirely clear against whom Plaintiff intended to raise his denial of medical treatment claim, but it appears to be Defendants Mariconda, John Doe 6, Lanigan, Johnson and D'Ilio.

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle*, 429 U.S. at 103–04. In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical

need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical
> treatment, however, and such denial exposes the inmate 'to undue

suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met. . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted). "[I]f necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." *Id.*

With regard to Defendant Mariconda, Plaintiff alleges when he was being examined by medical providers on December 1, 2016 at the prison infirmary, they wanted to fit him with a full-size cast on his arm. (Compl. ¶ 126.) Defendant Mariconda intervened and instead instructed the doctors to only use a half cast to make it easier to place handcuffs. (Compl. ¶ 127.) Accepting these allegations as true, Plaintiff has sufficiently alleged he had a serious medical need (broken arm), and Defendant Mariconda was deliberately indifferent to the need by preventing Plaintiff from receiving the recommended treatment of a full-size cast. *See Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 ("[D]eliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs . . . .'"). Similarly, Plaintiff states a claim against John Doe 6 because he allegedly forced medical personnel to remove Plaintiff's cast four weeks earlier than recommended. *Id.*; (Compl. ¶ 130).

Plaintiff has not, however, alleged sufficient facts to state a denial of medical care claim against Defendants Lanigan, Johnson and D'Ilio. He alleges he suffered from multiple facial fractures during the attack, but these Defendants "did not approve him for surgical treatment for six (6) months." (Compl. ¶ 132.) However, he provides no further information. He does not state who recommended surgery; how such surgery was recommended; how the request was conveyed

to all three of these Defendants, etc. Similarly, he states despite his suffering from pain since December 2016, the "DOC" did not approve him for therapy at a pain management clinic until June 13, 2018. (Compl. ¶ 137.) Again, he does not identify who is meant by "DOC"; who recommended pain management therapy; how the requests were conveyed; when they were conveyed, etc. In short, he fails to provide sufficient facts under *Iqbal* with regard to Defendants Lanigan, Johnson and D'Ilio, and their Motion to Dismiss this claim is therefore granted.

### 8. Qualified Immunity

Defendants next argue they are entitled to qualified immunity.[7]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome qualified immunity, a plaintiff must plead facts sufficient to show: (1) the official violated a statutory or constitutional right; and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citation omitted). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Notably, "clearly established law should not be defined at a high level of generality" but instead must "be particularized to the facts of the case." *White v. Pauly*, —— U.S. ——, 137 S. Ct.

---

[7] Counsel for Defendants does not identify which specific defendants are seeking qualified immunity.

548, 552, 196 L.Ed.2d 463 (2017) (per curiam) (citation omitted).

While the Third Circuit has cautioned "that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases," *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009), a complaint may be dismissed on a Rule 12(b)(6) motion based on qualified immunity "when the immunity is established on the face of the complaint," *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). Consequently, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

It appears Defendants are seeking qualified immunity for the excessive force claims only. (Defs.' Br. 29.) When identifying the "clearly established right," Defendants state there is no Supreme Court case or robust consensus of circuits which holds officers may not use force when a prisoner "remove[s] an object resembling a weapon from his pants (specifically a mirror), officers yell[] 'weapon,' and [take] him to the ground." (*Id.*). This framing of the right is inconsistent with the allegations contained in the Complaint for several reasons. First, the alleged assault began prior to the removal of the mirror, with a punch on the walk to the holding cell. (Compl. ¶ 102.) Second, it is disputed whether Plaintiff had an object resembling a "weapon" on him at the time Defendant DeFazio yelled "weapon." (Compl. ¶¶ 105-07.) Third, it does not appropriately account for the allegations the assault continued long after Plaintiff would have been simply been "taken to the ground." (Compl. ¶¶ 111-14.)

Because there are questions of fact which cannot be disposed of on a motion to dismiss, Defendants' Motion to Dismiss the excessive force claim on qualified immunity is denied. *See*,

*e.g.*, *Wiley v. City of Newark*, No. 16-2530, 2017 WL 4678202, at *2 (D.N.J. Oct. 16, 2017) (denying motion to dismiss where fact discovery was required to resolve factual dispute); *Custin v. Wirths*, No. 12-910, 2016 WL 1157644, at *4 (D.N.J. Mar. 22, 2016) (denying motion to dismiss where it "raise[d] factual issues that cannot be disposed of on a motion to dismiss").

### 9. Negligence

Next, it appears the Corrections Officer Defendants are moving to dismiss Plaintiff's state law negligence claim, and Defendants Lanigan, Johnson and D'Ilio are moving to dismiss the negligent hiring and/or supervision claim. (Defs.' Br. 29-30.)

To sustain a cause of action for negligence, a plaintiff must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (internal citations and quotation marks omitted). In their Motion, the Officer Defendants argue only

> [i]n the instant case, Plaintiff alleges that the Officer Defendants used force on him after declaring 'weapon' when he removed a sharp object (a mirror) from his pants while officers were attempting to search his person. Far from negligence, the allegation is that the Defendants acted intentionally in response to a perceived threat. The negligence claim should be dismissed as against the officer defendants.

(Defs.' Br. 29-30.) However, as pointed out by Plaintiff, there are no allegations contained in the Complaint the mirror was sharp; in fact, it was a prison-issue mirror. (Compl. ¶ 107.) Moreover, this argument does not address Plaintiff's allegation these Defendants failed to follow the strip search policy, which amounted to negligence. (*Id.* ¶ 108.) Accordingly, the Officer Defendants' Motion to Dismiss the negligence claim is denied.

Defendants Lanigan, Johnson and D'Ilio's Motion suffers similar defects. To state a claim for negligent hiring/supervision, a plaintiff must allege (1) the employer knew or had reason to

know of the "particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons," and (2) through the employer's negligence, the employee's "incompetence, unfitness, or dangerous characteristics proximately caused the injury." *See Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982).

In their Motion, Defendants Lanigan, Johnson and D'Ilio allege only "Plaintiff has made conclusory allegations that the supervisory Defendants in this case knew or should have known their subordinates might cause harm. These allegations, though, are far too vague to make out a claim of negligent hiring or supervision. The pleading standard unquestionably requires concrete factual matter over legal conclusions to support a claim." (Defs.' Br. 30.) However, Defendants fail to address Plaintiff's specific allegations about the knowledge these Defendants had about their subordinates' propensity to cause harm: the several civil cases involving instances of the officer defendants using excessive force and a Department of Corrections Preliminary Incident Report.[8] (Compl. ¶¶ 42-51.) Accordingly, Defendants Lanigan, Johnson and D'Ilio's Motion to Dismiss the negligence claim is also denied.

### 10. Assault and Battery

Defendants Patterson, DeFazio, Clifton, Perez, Danley and Christmas next move to dismiss Plaintiff's assault and battery claim.

Under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:2–2,

> [n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the

---

[8] The Court notes some of the prior incidents identified by Plaintiff in the Complaint, which allegedly put them on notice, occurred *after* Plaintiff's alleged assault in December 2016.

medical treatment expenses are in excess of $3,600.00.

The New Jersey Supreme Court has held to recover for pain and suffering from a public entity or employee, "a plaintiff must prove by objective medical evidence that the injury is permanent." *Brooks v. Odom*, 696 A.2d 619, 623 (N.J. 1997). "Temporary injuries, no matter how painful and debilitating are not recoverable. Further, a plaintiff may not recover under the Tort Claims Act for mere 'subjective feelings of discomfort.'" *Id.* Claims of emotional distress are included in the term "pain and suffering". *Ramirez v. United States*, 998 F. Supp. 425, 437 (D.N.J. 1998) (citing *Ayers v. Jackson Twp.*, 525 A.2d 287, 296 (N.J. 1987)).

Defendants argue this claim must be dismissed because Plaintiff makes only a conclusory allegation he has suffered "permanent injury," but does not allege any facts demonstrating he has suffered a permanent loss of a bodily function which is substantial or otherwise. (Defs. Br. 32.) However, Plaintiff has alleged he suffers from "severe and permanent injuries," including "permanent numbness" and "post-traumatic stress disorder." (Compl. ¶¶ 121; 262.) Accepting such allegations as true, which the Court must at this stage, the Court will therefore deny Defendants' Motion to Dismiss the assault and battery claim. *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d 188, 201 (D.N.J. 2008) ("In light of Plaintiffs' claims that they suffered extreme depression as a result of Defendants' conduct, the Court cannot conclude [at the motion to dismiss stage] that they have not suffered a permanent loss or incurred medical expenses in excess of $3,600.00.").

### 11. Intentional Infliction of Emotional Distress

Finally, Defendants Lieutenant Kennedy; Sergeant Defazio; Sergeant Patterson; Sergeant Scheuermann; Corrections Officer Perez; Corrections Officer Clifton; Corrections Officer Danley; Corrections Officer Christmas; and Corrections Officer Perkins move to dismiss Plaintiff's claim

for intentional infliction of Emotion Distress.

Under New Jersey law, to establish a prima facie claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Savs. Fund Soc'y*, 544 A.2d 857. 863 (N.J. 1988)). "An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006). However, a plaintiff will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair and unkind." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991).

In order to establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon*, 173 F. Supp. 2d at 242 (quoting *Buckley*, 544 A.2d at 863 (citation omitted)). As a threshold matter, the Court must determine whether a defendant's conduct meets this standard. *See Ali v. Jersey City Parking Authority*, No. 13-2678, 2014 WL 1494578, at *5 (D.N.J. Apr. 16, 2014) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). In order to establish severe emotional distress, a plaintiff must show emotional distress "so severe that no reasonable [person] could be expected to endure it." *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1113 (D.N.J. 1991) (quoting *Buckley*, 544 A.2d at 863).

Defendants argue Plaintiff's Complaint "does not describe severe emotional distress; rather

it describes garden-variety emotional distress which is not actionable as a matter of law – i.e. embarrassment, humiliation, anger and lack of sleep – leaving Plaintiff short of the pleading threshold." (Defs.' Br. 33-34.) In their Motion, Defendants fail to recognize Plaintiff did in fact allege specific emotional distress: post-traumatic stress disorder. (Compl. ¶ 25); *Taylor v. Metzger*, 706 A.2d 685, 697 (N.J. 1998) ("Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including . . . posttraumatic stress disorder.") (internal citations and quotation marks omitted). As such, Defendants' Motion to Dismiss on this basis is denied. Moreover, Defendants' argument that the Complaint fails to demonstrate any of the Defendants' actions actually caused the alleged distress is also availing. The Complaint is replete with allegations these Defendants participated in a multi-step assault of Plaintiff, and then continued by preventing adequate medical care for his subsequent injuries.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is adjudicated as follows:

- All claims against Defendants in their official capacity are dismissed with prejudice.

- Supervisory liability claims against Defendants Lanigan, Johnson and D'Ilio as related to excessive force shall proceed, but those supervisory claims related to denial of medical treatment and retaliation are dismissed without prejudice.

- Claim for punitive damages shall proceed.

- Failure to intervene claim shall proceed against Defendants Sergeant Defazio; Sergeant Patterson; Corrections Officer Perez; Corrections Officer Clifton; Corrections Officer Danley; and Corrections Officer Christmas, but it is dismissed without prejudice as against Lieutenant Kennedy, Sergeant Scheuermann and Corrections Officer Perkins.

- § 1985 conspiracy claim is dismissed without prejudice against all Defendants.

- § 1983 conspiracy to commit excessive force claim shall proceed against Sergeant Defazio; Sergeant Patterson; Corrections Officer Perez; Corrections Officer Clifton; Corrections Officer Danley, but it is dismissed without prejudice as against Defendant Christmas. § 1983 conspiracy to deny medical treatment and for retaliation claim is dismissed without prejudice as against all Defendants.

- Retaliation claim is dismissed without prejudice against all Defendants.

- Denial of medical treatment claim shall proceed against Defendant Mariconda and John Doe 6, but it is dismissed without prejudice against Defendants Lanigan, Johnson and D'Ilio.

- All Defendants' request for qualified immunity on the excessive force claim is denied without prejudice.

- The negligence claim against all Defendants shall proceed.

- The assault and battery claim against Defendants Patterson, Defazio, Clifton, Perez, Danley and Christmas shall proceed.

- The intentional infliction of emotional distress claim against Defendants Lieutenant Kennedy; Sergeant Defazio; Sergeant Patterson; Sergeant Scheuermann; Corrections Officer Perez; Corrections Officer Clifton; Corrections Officer Danley; Corrections Officer Christmas; and Corrections Officer Perkins shall proceed.

Plaintiff is granted leave to file an amended complaint to address the deficiencies identified above within thirty days.[9] An appropriate order follows.

Dated: January 31, 2020      */s/ Brian R. Martinotti*
                     **HON. BRIAN R. MARTINOTTI**
                     **UNITED STATES DISTRICT JUDGE**

---

[9] While the Complaint is lengthy, repetitive and confusing at times, the Court declines to grant Defendants' Motion to Dismiss the Complaint as violative of Federal Rule of Civil Procedure 8. (Defs.' Br. 34.) However, should Plaintiff decide to file an amended complaint, it would benefit both the parties and the Court if he were to file a more clear and concise document.